## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE NOEL GALINDO, *et al.*,<br>*Debtors*. | § | |
| _____ | § | |
| | § | |
| | § | |
| SELECT PORTFOLIO SERVICES, INC., | § | |
| *Appellant*, | § | |
| | § | CIVIL ACTION H-05-4384 |
| vs. | § | |
| | § | |
| NOEL AND AURORA GALINDO, | § | |
| *Appellees*. | § | |

### MEMORANDUM AND ORDER

Appellant Select Portfolio Services, Inc. (SPS) requests that the court vacate an order entered by the Bankruptcy Court sanctioning it in the amount of $75,000.00 (Dkt. 2). SPS maintains the sanctions are criminal in nature, and therefore beyond the statutory authority of the Bankruptcy Court to issue. In the alternative, SPS also contends the Bankruptcy Court abused its discretion by failing to make factual findings specific enough to support such sanctions. For the reasons that follow, the order is affirmed.

### BACKGROUND

Noel and Aurora Galindo filed an adversary proceeding on July 16, 2002, to correct the inaccurate crediting of their mortgage payments by their mortgage company, SPS (formerly known as Fairbanks Capital Corporation). After finding that SPS failed to use reasonable efforts to identify the reasons for the accounting errors and because it did not adequately respond to discovery, in April 2003 the Bankruptcy Court sanctioned SPS $5,000.00 per day, plus attorneys' fees. An agreed judgment was entered June 13, 2003, providing that SPS pay $37,884.35 in sanctions and fees. The

agreed judgment also corrected the Galindos' mortgage and escrow balances, setting the balance on the mortgage at $18,863.78.

Despite the judgment, SPS did not correct the Galindos' account. In January 2004, six months later, SPS transferred the loan, with the inaccuracies, to GMAC Mortgage Company. This created further problems for the Galindos' payment of their mortgage. Therefore, they filed a second motion for civil contempt against SPS for its failure to comply with the judgment.

On September 2, 2004, the Bankruptcy Court held an evidentiary hearing on the motion. Aaron Lewis, a collections supervisor for SPS, testified that it was still possible for SPS to rectify the accounting problems even after the transfer to GMAC. The Bankruptcy Court therefore found that it was within SPS's power to cure the inaccuracies. On October 5, 2004, the Bankruptcy Court issued a civil contempt order awarding the Galindos $4,234.33 and interest to correct the balance, plus prospective sanctions of $1,000.00 a day until the mortgage was finally corrected.

On March 25, 2005, the Bankruptcy Court heard a motion to reconsider the civil contempt order. SPS argued the sanction was excessive and that it did not have control over the account now serviced by GMAC. Other than to correct a minor typographical error, the motion was denied, and an amended contempt order was issued by the Bankruptcy Court on July 28, 2005. On October 24, 2005, the Bankruptcy Court heard SPS's second motion to reconsider. The substance of the sanctions were upheld again on December 15, 2005.

## LEGAL STANDARDS

This court has jurisdiction of the appeal under 28 U.S.C. § 158(a)(1), and in reviewing the findings of a bankruptcy court, a district court acts in an appellate capacity. *See Perry v. Dearing*, 345 F.3d 303, 308-09 (5th Cir. 2003). The burden is on the appellant to show that a finding of fact

made by a bankruptcy court is clearly in error. *See Perry*, 345 F.3d at 309; *Butler Aviation Int'l, Inc. v. Whyte*, 6 F.3d 1119, 1127-28 (5th Cir. 1993); *see also* FED. R. BANKR. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous . . . ."). A finding of fact is clearly erroneous when, even in the presence of evidence to support it, the reviewing court is left with a "definite and firm conviction" that the bankruptcy court has made an error. *See Carol v. Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005). A bankruptcy court's conclusions of law are reviewed *de novo. See Perry*, 345 F.3d at 309; *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 928 (5th Cir. 1999).

Under section 105 of the Bankruptcy Code, "a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997) (footnotes omitted); *see also* 11 U.S.C. § 105. A bankruptcy court's decision to impose sanctions is discretionary, and is therefore reviewed for abuse of discretion. *See Terrebonne Fuel*, 108 F.3d at 613. An award of attorney fees is also review for abuse of discretion. *See Musslewhite v. O'Quinn*, 270 B.R. 72, 78 (S.D. Tex. 2000) (citing *In re Anderson*, 936 F.2d 199, 203 (5th Cir. 1991)).

On the other hand, a bankruptcy court may not issue a criminal contempt order. *See Terrebonne Fuel*, 108 F.3d at 613 n.3. The "civil" or "criminal" nature of a contempt order is determined by the purpose the order is meant to serve. *See id.* at 612-13. A criminal contempt order is designed to punish the contemnor and to vindicate the authority of the court. *Id.* at 612. Civil contempt may have either of two ends: (1) to enforce compliance with a court's order through coercion; or (2) to compensate a party who has suffered unnecessary injuries or costs because of

contemptuous conduct.  *See id.*  In this case, the Bankruptcy Court's stated purpose for the order was the former.

### 1.      Nature of the Sanctions

SPS's primary arguments are that (1) because it transferred the mortgage to GMAC, it lost the ability to comply with the judgment, and (2) the sanctions were designed to punish SPS for prior acts making them impermissibly criminal in nature.  Neither argument is persuasive.

An inability to comply with a judicial order may constitute a defense to a charge of civil contempt.  *See United States v. Rylander*, 460 U.S. 752, 757 (1983); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987); *American Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 939 (N.D. Tex. 1999).  But the party raising that defense has the burden of production and this is a difficult burden to meet.  *See Rylander*, 460 U.S. at 757; *Fortin v. Commissioner of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 796 (1st Cir. 1982).  In order to show inability to comply with a court order, a party must: (1) explain categorically and in detail why; (2) show the inability was not self-induced; and (3) demonstrate it made in good faith all reasonable efforts to comply.  *See United States v. Santee Sioux Tribe of Nebraska*, 254 F.3d 728, 736 (8th Cir. 2001); *see also Lawrence v. Goldberg*, 279 F.3d 1294, 1297 (11th Cir. 2002); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998); *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).

SPS argues that after the transfer of the mortgage it lost the ability to comply with "coercive portion of the above-cited sanctions order 'because the evidence at trial showed that SPS has no control over the correction of the subject loan amount or the issuance of statements on the subject

4

loan amount due to the transfer of the servicing of the subject loan account in January 2004.'"[1]  The Bankruptcy Court found this factual assertion unpersuasive and SPS has offered nothing demonstrating this finding to be clearly erroneous.  The Bankrucptcy Court heard testimony from Aaron Lewis, a collections supervisor for SPS, that it was "possible" for SPS "to fix this account," even after the transfer to GMAC.  SPS attempts to gloss this testimony to mean exactly the opposite; that it was in fact not possible for SPS to comply.[2]  This is a strained inference to draw.  In any event, the Bankruptcy Court heard Lewis's testimony first hand, and due regard must be given to the Bankruptcy Court's assessment of a witness's credibility.  *See* FED. R. BANKR. P. 8013.

In addition, it is undisputed that SPS retained control over the account for six months after the agreed final judgment.  At no point during that six month period did it correct the inaccuracies persistently plaguing the account.  After failing to comply with the judgment for six months, it then chose, voluntarily, to transfer the account to GMAC in January 2004.  Despite the judgment and prior sanctions for inaccurate records, it inexplicably transferred an incorrect statement to GMAC that continued to create ongoing problems for the Galindos.  And even after the second motion for sanctions was filed, it took no discernable steps to correct the situation until October 2005.  This does not show that SPS made a good faith effort to take all reasonable steps to comply with the judgment.

SPS's second main argument is that the sanctions were criminal in nature.  SPS contends the sanctions were "a thinly veiled attempt to punish the Appellant for past acts, rather than for the purpose of coercing the Appellant to take future acts . . . ."[3]

---

[1]      Dkt. 2.

[2]      *See* Dkt. 7.

[3]      Dkt. 2.

5

SPS cites *Tele-Wire Supply Corp. v. Presidential Fin. Corp., Inc.*, 55 B.R. 746, 747-48 (N.D. Ga. 1985), as suggesting that because "a fine of $100.00 per day" was found by that court to be criminal in nature rather than civil, it follows all the more that a sanction of $1000.00 per day is criminal rather than civil. This case is of questionable precedential value[4] and is distinguishable. In February 1985, the bankruptcy court in that dispute imposed a $100.00 a day fine beginning November 27, 1984, and continuing through January 28, 1985.[5]  *Id.* at 747. The fine was thus retrospective rather than prospective. An unconditional fine where a contemnor has no subsequent opportunity to reduce or avoid the fine through compliance is criminal in nature rather than coercive. *See Crowe v. Smith*, 151 F.3d 217, 227 (5th Cir. 1998). But if a party does have the opportunity to avoid the fine through compliance, this tends to show that it is coercive in nature rather than punitive. In this very motion, SPS refers to the sanctions as "coercive."[6]  Coercion is a valid purpose and defining characteristic of civil contempt.

In *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 399 (5th Cir. 1987), the Fifth Circuit noted several factors distinguishing civil from criminal contempt that apply in this matter. While certainly not controlling, the Bankruptcy Court described the sanctions as "civil" and as necessary to coerce a recalcitrant party. *See id.*  The sanction runs in favor of the other party rather than the court. *See id*; s*ee also Crowe v. Smith*, 151 F.3d 217, 227 (5th Cir. 1998)  Payment of the sanction would allow SPS to purge itself of contempt. *See Petroleos Mexicanos*, 826 F.2d at 399; *Crowe*, 151 F.3d at 227. Another factor is that the contempt was sought by the motion of the

---

[4]  Among other things, the *Tele-Wire Supply* court concluded that bankruptcy courts are without power to issue civil contempts.  55 B.R. at 751-52.

[5]  The opinion incorrectly lists the beginning period as November 27, 1985, but it is clear that it meant "1984."

[6]  *See* Dkt. 2, p. 6.

Galindos rather than on the Bankruptcy Court's own motion.   Accordingly, the court finds the contempt order to be civil rather than criminal and therefore within the authority of the Bankruptcy Court.

## 2.     Factual Findings

In the alternative, SPS contends that even if sanctions were warranted, the Bankruptcy Court abused its discretion by awarding sanctions totaling $75,000.00, and by failing to make factual findings specific enough to support such sanctions.

SPS suggests that $75,000.00 in sanctions in connection with a mortgage valued at approximately $18,000.00 is on its face an abuse of discretion.   But contrary to SPS's repeated characterization of the sanction, the Bankruptcy Court did not fine it $75,000.00.   The Bankruptcy Court fined it $1000.00 per day and it took SPS seventy-five days before it complied.   There is an important difference between the two.   SPS also states that at one point the mortgage balance was off by a mere $20.00, suggesting a lack of proportionality in the sanctions award.   But as explained by the Bankruptcy Court, it was exactly these sort of simple and continuing accounting errors that caused the ongoing problems.[7]   For instance, because of this "minor" inaccuracy, the Galindos' payments to their mortgage servicer were refused.

Turning next to the sufficiency of the factual findings, SPS correctly refers to *Topalian v. Ehrman*, 3 F.3d 931, 936-38 (5th Cir. 1993), as controlling.   There the Fifth Circuit described a "sliding scale" of factual findings necessary to support the imposition of sanctions.   *Id*.   With the level of precision increasing in proportion to severity, a court's findings must reflect: (1) the conduct being

---

[7]         *See* Dkt. 5, Ex. 12 (Dec. 15, 2005 Order n.2).

7

punished or being deterred by the sanctions; (2) the connection between the amount of the sanctions and the conduct of the violating party; (3) consideration of the reasonableness of the non-violating party's action, such as mitigation or delay in seeking court intervention; and (4) the sanction is the least severe sanction adequate to achieve its purpose to demonstrate that the sanction is necessary rather than vindictive. *Id.* SPS does not contest the third factor. The court finds that SPS has not shown the others to be lacking.

The Bankruptcy Court clearly explained that it was sanctioning SPS to coerce it to correct the Galindos' account. The order sanctioning states, "The Court further finds it necessary to coerce Fairbanks to rectify its erroneous accounting information it transferred to GMAC with sanctions of $1,000.00 per day until debtor's monthly mortgage statement from whichever account servicer issues the statement is accurate in all respects."[8] It is worth noting that the Bankruptcy Court issued in total four written orders setting forth reasons for the awarding of sanctions and attorney fees.[9] The Bankruptcy Court also conducted a hearing on the motion to hold SPS in civil contempt, and it then held two further hearings on SPS's motions to reconsider.[10] Taken cumulatively, these do not suggest either a lack of explanation for the sanctions, or any arbitrariness or lack of due consideration on the part of the Bankruptcy Court.

With respect to the second factor, SPS argues the Bankruptcy Court failed to sufficiently articulate the connection between the amount of the monetary sanction and the sanctionable conduct. The court disagrees. The Bankruptcy Court issued several orders more than sufficiently

---

[8]      Dkt. 5, Ex. 9.

[9]      *See* Bankruptcy Docket Nos. 36, 46, 49, 65.

[10]     *See* Bankruptcy Docket Nos. 45 (Transcript of September 2, 2004 hearing); 48 (Transcript of March 28, 2005 hearing); and 68 (Transcript of October 24, 2005 hearing).

demonstrating the connection between the sanctions and SPS's conduct.  In sum, these orders set forth the following: The Galindos initiated proceedings on July 16, 2002 to compel SPS to properly credit their payments to their mortgage account.  In April 2003, the Bankruptcy Court found it necessary to sanction SPS $5,000.00 per day because it failed to use reasonable efforts to identify the reasons for the accounting errors and because it did not adequately respond to discovery.  On June 13, 2003, the court entered an agreed judgment meant to finally correct the mortgage account. Despite this order, and despite prior sanctions against it, SPS failed to correct the account for the next six months.  It then transferred the account, with the wrong information, to GMAC.  The Galindos therefore reopened the adversary proceedings and again moved for civil contempt sanctions. The Bankruptcy Court heard this motion on September 2, 2004.  On October, 5, 2004, more than two years after the proceedings began to correct the mortgage account, and more than a year after the final judgment, the Bankruptcy Court found it necessary to impose daily sanctions on SPS to coerce it to finally make the corrections.  After more than two years of unjustified recalcitrance on the part of SPS, and tens of thousands of dollars of previously imposed fines, the connection between the amount of the sanctions and SPS's conduct is sufficiently clear.

As for the last disputed factor, SPS asserts that it is "self-evident that assessing $75,000 in daily sanctions" is not the least severe sanction adequate to accomplish its purpose.  If the Bankruptcy Court had in fact assessed $75,000 in "daily sanctions," the court might agree.  But the Bankruptcy Court did no such thing.  It assessed, prospectively, sanctions of $1000.00 per day.  Rather than suggesting excessiveness, the fact that it took SPS seventy-five days to finally comply  suggests that even this amount was not severe enough to achieve its intended purpose of convincing SPS to take prompt action.

## CONCLUSION

The court concludes that the sanctions imposed by the Bankruptcy Court are civil in nature and the amount is neither clearly erroneous nor an abuse of discretion.

Accordingly, the Bankruptcy Court's civil contempt order is AFFIRMED.

Signed on July 31, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge

10